IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 05-cv-02044-REB-MEH

ANGELO ABLO,
TONY ALBO,
ORLANDO LUJAN, and
LADY SKORSKI,

    Plaintiffs,

v.

DURANGO SCHOOL DISTRICT NO. 9-R,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

This matter is before me on the defendant's **Motion for Summary Judgment** [#34], filed December 14, 2006. The plaintiffs filed a response [#41], and the defendant filed a reply [#45]. I grant the motion.

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question).

### II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v.***

***Zenith Radio Corp.***, 475 U.S. 574, 586 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  ***Concrete Works***, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 528 U.S. 933 (1999).

### III. SUMMARY OF FACTS & CLAIMS

Unless noted otherwise, the facts described in this order are undisputed and based on the evidence in the record.  I will refer to the defendant's exhibits as they are designated in its motion for summary judgment, e.g., "*Defendant's Exhibit* A-1."  I will refer to the plaintiffs' exhibits as they are designated in their response to the motion for summary judgment, e.g., "*Plaintiffs' Exhibit* 1."

The four plaintiffs, Angelo Albo, Tony Albo, Orlando Lujan, and Lady Skorski,

were employees of the defendant, Durango School District No. 9-R (the district). The four plaintiffs were employed as custodians. At the time of the events relevant to this case, the plaintiffs were assigned to Escalante Middle School (EMS). On June 25, 2004, a substitute custodian at EMS lost consciousness and was injured. The EMS custodians working at the time of this injury, including plaintiffs Angelo Albo, Tony Albo, Orlando Lujan, and Lady Skorski, were placed on unpaid leave pending an investigation. One other custodian, Richard Barber, also was placed on unpaid leave pending an investigation.

The district then hired an investigator, Glenn Dorrell, to conduct an independent investigation of the custodians at EMS. The investigator concluded that each of the plaintiffs had engaged in specific types of misconduct in the course of their employment by the district. The investigator concluded that plaintiff, A. Albo, had helped to create a hostile work environment, had used tobacco on school grounds in violation of state law, and had been insubordinate. *Defendant's Exhibit* A-7. The investigator concluded that plaintiff, T. Albo, had helped to create a hostile work environment, had used cleaning products in a dangerous manner, had used tobacco on school grounds in violation of state law, and had been insubordinate. *Defendant's Exhibit* A-1. The investigator concluded that plaintiff, Skorski, had helped to create a hostile work environment, had used tobacco on school grounds in violation of state law, and had been insubordinate. *Defendant's Exhibit* A-2. The investigator concluded that plaintiff, Lujan, had slept overnight in the school facility, had left the school during his assigned work shift, had worked fewer hours than the hours for which he was paid, and had been insubordinate. *Defendant's Exhibit* A-3.

After district officials received the investigator's report, the district terminated the employment of each of the plaintiffs. *Defendant's Exhibits* A-4, A-5, A-6, A-8 (termination letters). The plaintiffs allege that the district terminated their employment based on their race, their national origin, and their ancestry, in violation of Title VII. Skorski alleges also that her employment was terminated in retaliation for her protest of discrimination practiced by a district manager, which discrimination was directed at the three other plaintiffs. She alleges also retaliation based on her association with the three other plaintiffs, who are Latino. On this additional basis, Skorksi claims her termination was in violation of Title VII. Skorski is Native American.

## IV.  RACE, NATIONAL ORIGIN, AND ANCESTRY DISCRIMINATION

Title VII does not explicitly prohibit discrimination based on ancestry. 42 U.S.C. § 2000e-2(a). However, § 2000e-2(a) does explicitly prohibit employment discrimination based on national origin. For the purpose of this case, I view the plaintiffs' claim of employment discrimination based on their ancestry as identical to their claim of discrimination based on their national origin. ***Espinoza v. Farah Mfg. Co., Inc.***, 414 U.S. 86, 88 (1973) ("term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."). Therefore, I will not refer further to an ancestry discrimination claim in this order.

The plaintiffs have presented no direct evidence or race or national origin discrimination. Therefore, I employ the familiar burden-shifting analysis of ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 802-04 (1973). If a plaintiff satisfies the burden of establishing a *prima facie* case of discrimination, the burden then shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. If defendant meets this burden, then the plaintiff must prove the ultimate fact of discrimination by showing that defendant's proffered reason is pretextual. See **Young v. Dillon Companies, Inc**., 468 F.3d 1243, 1249 (10th Cir. 2006) (Title VII); **McKnight v. Kimberly Clark Corp.**, 149 F.3d 1125, 1128 (10th Cir. 1998) (ADEA).

A. Prima Facie Case & Legitimate Non-Discriminatory Reason

To establish a *prima facie* case of race or national origin discrimination, each plaintiff must show that 1) he or she is a member of a protected class; 2) he or she was qualified to perform his or her job; 3) despite his or her qualifications, he or she was discharged; and 4) the job was not eliminated after his or her discharge. The district concedes that each of the plaintiffs can establish a prima facie case of race or national origin discrimination.

However, the district asserts that each plaintiff committed certain work rule violations and other misconduct, which constitutes a legitimate, non-discriminatory reason for each plaintiff's discharge in July, 2004. The district cited the following reasons, which are stated in the investigator's reports and in the termination letters it sent to each plaintiff:

> **A. Albo**: Created or participated in hostile work environment; used tobacco on EMS grounds in violation of State statute; and insubordination. *Defendant's Exhibits* A-7, A-8.
>
> **T. Albo**: Created or participated in a hostile work environment; used cleaning products in a dangerous manner, used tobacco on EMS grounds in violation of State statute; and insubordination. *Defendant's Exhibits* A-1, A-4.
>
> **Lujan**: Slept overnight at EMS; left school during assigned work shift;

5

>worked less hours than he was paid for; harassed fellow employees; and insubordination. *Defendant's Exhibits* A-3, A-6.
>
>**Skorski**: Created or participated in hostile work environment; used tobacco on EMS grounds in violation of State statute; and insubordination. *Defendant's Exhibits* A-2, A-5.

On their face, the reasons cited by the district for each plaintiff's termination are legitimate, non-discriminatory reasons for the terminations.

### B.  Pretext

To survive summary judgment in this evidentiary context, the each plaintiff must come forward with evidence that would permit a reasonable trier of fact to conclude that the district's legitimate, non-discriminatory reasons for terminating that plaintiff is unworthy of credence, and was a pretext for discrimination.  If such evidence exists, then a reasonable trier of fact may infer that the district did not act for the asserted non-discriminatory reasons.

"Pretext may be demonstrated by revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." ***Morales v. McKesson Health Solutions, LLC***, 136 Fed.Appx. 115, 118 (10th Cir. 2005)(***citing Morgan v. Hill, Inc.***, 108 F.3d 1319, 1323 (10th Cir. 1997).  Recognized categories of proof of pretext include proving the articulated reason is not the true reason, ***York v. AT&T***, 95 F.3d 948, 954 (10th Cir. 1996); proving the plaintiff was subjected to different discipline or terminated differently than other employees who committed the same or more serious offenses, ***McDonnell Douglas***, 411 U.S. at 804; ***Elmore v. Capstan, Inc.***, 58 F.3d 525 (10th Cir. 1995);

6

*David v. City & County of Denver*, 101 F.3d 1344 (10th Cir. 1996); and the articulated reason is unworthy of credence, *Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995).

In their response to the motion for summary judgment, all plaintiffs assert the same factual bases for their claim that the district's reasons for terminating them were pretexts for unlawful discrimination. Their primary bases are 1) the plaintiff's supervisor, Thomas Dickson, said that he wanted to get rid of the lazy Mexicans at EMS; 2) Dickson's comments were reported to district administrators, but the district failed to investigate Dickson's racist comments; and 3) the district engaged in disparate treatment of custodians because other custodians had engaged in conduct similar to that of the plaintiffs, but those custodians were not terminated. Plaintiffs, T. Albo, A. Albo, and Lujan, also cite their past satisfactory performance evaluations as evidence of pretext.

**1. Dickson's Alleged Comments** - At all times relevant to this case, Thomas Dickson was the Assistant Facilities Director for the district, and had supervisory responsibility over all custodians, including the plaintiffs. Three witnesses, other than the plaintiffs, have testified that they heard Dickson make racist comments about Hispanics. *Plaintiffs' response* [#41], filed January 8, 2007, p. 4 (exhibits cited). Plaintiff, Skorski, says she heard Dickson make similar comments concerning plaintiffs, Angelo and Tony Albo. *Id*. Skorski and one other witness say they reported Dickson's comments to district administrators. *Id*. Skorski prompted a union representative to file a complaint concerning Dickson's racism. Dickson denies making the comments described by these witnesses.

The district argues that Dickson was not a decision maker concerning the plaintiffs' terminations. If Dickson did not influence the decision to terminate the plaintiffs, then the racist comments allegedly made by Dickson do not tend to demonstrate pretext. When a subordinate of an employment decision-maker exhibits bias, that bias is sufficient to support an employment discrimination claim only when the plaintiff can establish that the subordinate had

> more than mere 'influence' or 'input' in the decisionmaking process. Rather, the issue is whether the biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action.
>
> * * * *
>
> In the context of a subordinate liability claim, "an employer can avoid liability by conducting an independent investigation of the allegations against the employee. In that event, the employer has taken care not to rely exclusively on the say -so of the biased subordinate, and the causal link is defeated."

*E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 487 - 488 (10th Cir. 2006).

The evidence in the record demonstrates that Dickson had frequent contact with Susan Terrill-Flint, who was the district's Human Resources Director. After the incident in which custodian Rex Henderson passed out at Escalante, the four plaintiffs and one other Escalante custodian, Richard Barber, were suspended. The decision to suspend these custodians was made jointly by Terrill-Flint, her direct supervisor, Dianne Doney, the Superintendent, Dr. Mary Barter, and Dickson. Barter and Terrill-Flint then made the decision to hire an investigator, Glenn Dorrell. Terrill-Flint told Dorrell that she wanted him to investigate allegations of misuse of cleaning products, harassment, and misuse of tobacco on school grounds. Terrill-Flint provided Dorrell with a summary of

8

the background of each of the custodians, and with some suggested questions for each custodian.  *Plaintiffs' Exhibit* 11 (Dorrell Deposition), pp. 34 - 35 and Deposition Exhibit 98.

The plaintiffs argue that Dorrell's investigation was not independent because Dorrell had been used previously to gather evidence to support a termination, because Terrill-Flint closely controlled the investigation, and because the investigator was not told of the allegations of racial bias against Dixon.  The fact that the investigator had been used previously, and that the previous investigation led to a termination, does not tend to show that the investigation was biased toward termination or was influenced by racial bias.  The plaintiffs' claim that Terrill-Flint closely controlled the investigation is based on the background information and suggested questions that Terrill-Flint gave to Dorrell.  *Plaintiffs' Exhibit* 11 (Dorrell Deposition), pp. 34 - 35 and Deposition Exhibit 98.  This information and the suggested questions do not demonstrate that Terrill-Flint exercised a level of control over the investigation that would indicate that the investigation was not independent.  Finally, assuming Dorrell was not told of the allegation of racial bias against Dickson, this fact does not tend to show that Dorrell's investigation was somehow influenced by this alleged racial prejudice, or that the investigation otherwise was controlled unduly.  Based on the evidence cited by the plaintiffs, no reasonable fact finder could conclude that Dorrell's investigation was not independent or that it was influenced by discriminatory motives.

After Dorrell completed his reports on each of the plaintiffs, the district decided to terminate the plaintiffs' employment.  Terrill-Flint testified in her deposition that Dickson was involved in the decision to initiate the termination process by giving

termination notices. *Plaintiffs' Exhibit* 1 (Terrill-Flint deposition), p. 65. However, she testified that Dickson's involvement in the decision was not active, but that he was advised and kept aware of the process. *Id.*, pp. 98 - 99. She testified that Dickson did not recommend that the plaintiffs be terminated, and that he "just didn't say anything" about whether or not the plaintiffs should be terminated. *Id.*, p. 99. This testimony indicates that the district did not rely on Dickson's statements of fact or his opinions in making the termination decision. Terrill-Flint testified that the results of Dorrell's investigation, Dickson's reports, and the reports of other school employees all contributed to the district's conclusion that the plaintiffs had committed certain violations that merited their termination. *Id.*, pp. 66 - 67.

The undisputed facts in the record show that, at the time of the termination decision, the district did not rely exclusively on information from or the recommendation of Dickson. On this evidence, a reasonable juror could not conclude that Dickson's allegedly discriminatory comments or reports about the plaintiffs caused the plaintiffs' terminations. There is no evidence that, following Dorrell's investigation, Dickson submitted any critical reports about the plaintiffs to the district's decision-makers, or that Dickson recommended that the plaintiffs be terminated. Absent such evidence, considered in the context of the undisputed facts evident in the record of this case, no reasonable juror could conclude that Dickson's allegedly discriminatory comments or recommendation caused the plaintiffs' terminations.

Finally, Dickson's peripheral involvement in the termination decision also undermines fatally the plaintiff's argument that the allegations that Dickson made racist comments provides direct evidence of racial discrimination. If Dickson had been a

10

decision maker, then evidence of his bias against Hispanics and Native Americans would be direct evidence of discrimination.  As discussed above, the evidence in the record shows that Dickson had little, if any, influence on the termination decision, and, thus, he cannot be said to have been a decision maker in the termination decision.

**2. District's Response to Dickson's Alleged Comments** - The plaintiffs note that Dickson's alleged comments reflecting his racial bias were reported to district administrators, but the district failed to investigate thoroughly Dickson's racist comments.  On the other hand, the plaintiffs note that they were investigated thoroughly, and eventually discharged, based on the perception that they had violated various work rules.  The plaintiffs claim this disparity in treatment indicates that the district's stated reason for their termination is a pretext for discrimination.

An employment discrimination plaintiff may show pretext by showing that he or she was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness.  ***Green v. New Mexico***, 420 F.3d 1189, 1194 - 1195 (10th Cir. 2005).  A similarly situated employee is one who "deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline."  ***Kendrick v. Penske Transportation Servs., Inc.***, 220 F.3d 1220, 1230 (10th Cir. 2000).  Dickson was the plaintiffs' supervisor.  Obviously, Dickson could not report to the same supervisor as the plaintiffs.  Dickson is not a relevant comparator for the purpose of a pretext analysis.  The fact that Dickson and the plaintiffs may have shared an ultimate supervisor above Dickson does not make them similarly situated for the purpose of a pretext analysis. The district's reaction to the allegations that Dickson made racist comments does not demonstrate pretext.

11

**3. Disparate Treatment of Other Custodians** - The plaintiffs argue that pretext is demonstrated by the fact that Dorrell's report to the district indicated that other, unnamed custodians had used cleaning products improperly, and had used tobacco on school grounds, but were not disciplined as severely as the plaintiffs.  Again, an employment discrimination plaintiff may show pretext by showing that he or she was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness.  *Green v. New Mexico*, 420 F.3d 1189, 1194 - 1195 (10th Cir. 2005).  With regard to other custodians who may have engaged in misconduct, the plaintiffs have not submitted any evidence to show that these employees were nonprotected employees, nor have they cited any evidence that any other custodian had been found to have engaged in multiple incidents of poor conduct similar to the plaintiffs' poor conduct, as indicated in Dorrell's investigation.  In short, the plaintiffs have not come forward with evidence that would permit a reasonable juror to conclude that other, similarly situated employees were treated differently from the plaintiffs.

**4. Satisfactory Job Performance** - Plaintiffs, A. Albo, T. Albo, and Lujan, note that they received satisfactory job performance evaluations from their supervisor.  These performance evaluations were made before Dickson became the supervisor of these plaintiffs.  The plaintiffs argue that these satisfactory performance evaluations indicate that the district's stated reasons for their termination are pretextual.  Previous satisfactory performance evaluations may be seen as evidence of pretext when there are "glaring contradictions" between the plaintiffs performance evaluations and the employer's stated reasons for termination.  *See Cole v. Ruidoso Mun. Schools*, 43

F.3d 1373, 1380 (10th Cir. 1994).

Here, the evaluations of a past supervisor indicating that these three plaintiffs performed their jobs satisfactorily while under his supervision do not present a stark or glaring contradiction to the investigator's conclusion that these three plaintiffs violated specific work rules. A statement that an employee violated a specific work rule in the present or recent past does not contradict a statement that the same employee performed his job satisfactorily in the more distant past. In the context of this case, the plaintiffs' past satisfactory work evaluations do not provide evidence of pretext.

**5. Conclusion - Pretext** - For the reasons discussed above, I find and conclude that no reasonable fact finder could conclude, based on the evidence cited by the plaintiffs, that the district's legitimate non-discriminatory reasons for terminating the plaintiffs' employment were pretexts for discrimination. I have considered fully the other bases for a finding of pretext that are cited briefly by the plaintiffs in their response to the motion for summary judgment. I find and conclude that all of the bases cited by the plaintiffs would not support a finding of pretext by a reasonable finder of fact.

### C. Conclusion

The plaintiffs have established a *prima facie* case of race and national origin discrimination. The defendant has come forward with a legitimate non-discriminatory reason for each plaintiff's termination. The plaintiffs have not come forward with any colorable evidence that tends to show that these reasons were a pretext for race or national origin discrimination. Absent some evidence that could support a finding that the district's legitimate nondiscriminatory reasons for the plaintiffs' terminations were a

13

pretext for race or national origin discrimination, the defendant is entitled to summary judgment on the plaintiffs' claim alleging discrimination on the basis of race and national origin.

## V. SKORSKI'S RETALIATION CLAIM

Under Title VII, it is unlawful for an employer to retaliate against an employee for an employee's opposition to practices made unlawful by Title VII. A *prima facie* case of retaliation requires a plaintiff to show that 1) she engaged in protected opposition to discrimination; 2) a reasonable employee would have found the employer's alleged retaliatory action to be materially adverse, meaning that the employer's action might dissuade a reasonable worker from making or supporting a charge of discrimination; and 3) a causal connection exists between the protected activity and the materially adverse action. **E.E.O.C. v. PVNF, L.L.C.**, 487 F.3d 790, 803 (10th Cir. 2007).

If the plaintiff establishes a *prima facie* case of retaliation, and there is no direct evidence of retaliation, then the burden-shifting analysis of **McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 802-04 (1973), is applicable. *Id*. at 804. Thus, if a plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. If defendant meets this burden, then the plaintiff must prove the ultimate fact of retaliation by showing that defendant's proffered reason is pretextual.

Skorski says she filed a written complaint concerning Dickson's racist remarks on May 6, 2004, and she complained verbally to Terrill-Flint and another district administrator on June 2, 2004. For the purpose of resolving the motion for summary

judgment, I assume that Skorski's reports reasonably can be seen as opposition to discrimination that is protected by Title VII. Skorski was suspended on June 30, 2004, and she was terminated on July 15, 2004. I assume further that these facts establish a *prima facie* case of retaliation.

As discussed above, the district's stated reasons for Skorski's termination are legitimate non-discriminatory reasons for her termination. To demonstrate that these reasons were a pretext for retaliation against Skorski, Skorski relies on three circumstances. First, she relies on the evidence of pretext she cited in support of her race and national origin discrimination claim. As discussed above, I find and conclude that the evidence of pretext cited by Skorski in relation to her race and national origin discrimination claim is not sufficient to permit a reasonable fact finder to find pretext. For the same reasons this same evidence is not sufficient to permit a reasonable fact finder to find pretext in relation to Skorski's retaliation claim.

Second, Skorski cites a statement made by Dickson when Skorski was considering a transfer at EMS. According to Skorski, Dickson warned Skorski that she should not transfer to EMS because the Albos would make her quit. At the same time, according to Skorski, Dickson made derogatory comments about Mexicans. Skorski says she asked Dickson if she had anything to worry about, since she is of Native American ancestry. She says Dickson told her that she wouldn't have any problems if she kept her mouth shut.

Assuming Dickson made these statements, they may be considered to be evidence of Dickson's motivation. However, as discussed in relation to Skorski's race and national origin discrimination claims, the undisputed facts in the record show that,

15

at the time of the termination decision, the district did not rely exclusively on information from or the recommendation of Dickson. On this evidence, a reasonable juror could not conclude that Dickson's alleged comments show that his alleged retaliatory motivation toward Skorski caused the Skorski's termination.

Third, Skorski relies on the temporal proximity between her written and verbal complaints on May 6, 2004, and June 2, 2004, and her suspension on June 30, 2004, and her termination on July 15, 2004. Obviously, these events have a close temporal proximity. However, even close temporal proximity, taken alone, is not sufficient to establish pretext in the context of a retaliation claim. ***Campbell v. Gambro Healthcare, Inc.***, 478 F.3d 1282, 1291 (10th Cir. 2007).

Skorski has not come forward with evidence that shows that there is a genuine issue of material fact as to whether the district's stated reasons for her termination were a pretext for retaliation against Skorski. Stated differently, Skorski has not come forward with evidence that would permit a reasonable juror to find that the district's stated reasons for Skorski's termination were a pretext for retaliation. Absent some evidence that would support a finding of retaliation, the district is entitled to summary judgment on Skorski's retaliation claim.

### VII.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the defendant's **Motion for Summary Judgment** [#34], filed December 14, 2006, is **GRANTED**;

2. That judgment **SHALL ENTER** in favor of the defendant, Durango School

16

District No. 9-R, and against the plaintiffs, Angelo Albo, Tony Albo, Orlando Lujan, and Lady Skorski,

     3.  That the plaintiffs' claims are **DISMISSED WITH PREJUDICE**;

     4.  That the Trial Preparation Conference set for September 7, 2007, at 9:30 a.m., and the trial scheduled to commence on Monday, September 24, 2007, are **VACATED**;

     5.  That defendant is **AWARDED** its costs to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR. 54.1.

Dated September 7, 2007, at Denver, Colorado.

                                            **BY THE COURT:**

                                            **s/ Robert E. Blackburn**
                                            **Robert E. Blackburn**
                                            **United States District Judge**